**James BROWN, Appellant,**

v.

**UNITED STATES of America.**

No. 76–2170.

United States Court of Appeals, Third Circuit.

Submitted March 29, 1977.

Decided May 31, 1977.

James Brown, pro se.

Blair A. Griffith, U. S. Atty., Judith K. Giltenboth, Asst. Atty. Gen., Pittsburgh, Pa., for appellee.

Before VAN DUSEN, GIBBONS and GARTH, Circuit Judges.

OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This is an appeal, pursuant to 28 U.S.C. § 2255, from a district court order dismissing without a hearing petitioner's "Motion to Set Aside and Vacate Judgment of Con-

viction and Sentence Imposed in Criminal Number 73–139."[1] Petitioner contends that the district court erred insofar as it did not hold a hearing on his motion. We disagree, on the facts of this case, and will affirm the order of the district court.

## I.

At petitioner's trial, one Emma Mozee testified on cross-examination by defense counsel as follows:

"Q. Have you been hospitalized and treated for mental illness?

"Mr. Scarlata: That is objected to.

"Ms. Mozee: Not that I know of.

"The Court: It is answered. I will let the record stand.

"Ms. Mozee: I have been hospitalized for him beating me, but no mental illness.

"Q. No mental illness?

"Ms. Mozee: No sir."

N.T. 633. Afterwards, during the course of the trial, petitioner's counsel moved to have the court direct the Government to make Ms. Mozee available for further examination primarily because petitioner had advised him that "the witness Emma Mozee has not testified honestly concerning her history of treatment for mental disease or disorders," and that petitioner wanted additional cross-examination in this respect. N.T. 848. The Government resisted that motion on the basis that "what [was] sought to be proved through her being called back . . . is a matter . . . provable without her being here." The court ruled that it would order her brought

back if it thought that she was necessary, but that "[s]he was subjected to considerable cross-examination," and that further cross-examination concerning her receipt of psychiatric treatment would be of no benefit to the petitioner. N.T. 848–50.

The dissent assumes that the witness told the prosecuting attorney that she "had mental treatment at Maricopa County Hospital," whereas her affidavit states only that she had such treatment and that

"The prosecuting attorney in the case was very much aware of the fact that I spent (4) days in the mental ward of Maricopa County Hospital when he put me on the stand."

This is fully explained by the affidavit described at pages 4–5 below. The testimony of the witness on cross-examination, quoted at page 2 above, was that she had only been hospitalized for physical injuries inflicted by Brown.

Petitioner did not pursue the matter of this alleged perjury further at trial or on appeal,[2] but, rather, filed the above-mentioned "Motion to Set Aside and Vacate Judgment, etc." on March 17, 1976—over two years after the trial. In that motion, petitioner alleged: that Emma Mozee testified untruthfully at trial to the effect that she had never been hospitalized for mental illness; that the Government was aware of the falsity of this testimony; and that the mandate of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), was violated by the failure of the Government to make the circumstances surrounding the alleged hospitalization for mental illness

1. On the motion, petitioner was represented by counsel. In this appeal, he proceeds pro se.

The prior history of this case is essentially as follows: After a jury trial, petitioner was found guilty of charges of violating federal narcotics law. *See United States v. Robinson, et al.*, Criminal Action No. 73–139 (W.D.Pa.). A ten-year custodial sentence, and a special three-year parole term, were imposed in addition to a fine. Petitioner is presently serving this sentence in the federal penitentiary at Lewisburg, Pa. On appeal, this court affirmed the judgment of conviction without opinion. *Appeal of Brown*, 500 F.2d 1399 (3d Cir. 1974).

2. Although the petitioner now alleges the facts concerning the hospitalization of the witness at

Phoenix are "newly discovered," these same facts were asserted by him during the trial and are not a proper basis for a collateral attack. *See Valmont Industries, Inc. v. Enresco, Inc.*, 446 F.2d 1193 (10th Cir. 1971). Collateral attack is not available as a substitute for an appeal, *United States v. Sappington*, 527 F.2d 508 (8th Cir. 1975), or as a means of showing trial error. *See Crismon v. United States*, 510 F.2d 356 (8th Cir. 1975). Also, petitioner has failed to show that the Government knew of the alleged perjury at the time it used the testimony of Ms. Mozee. See *Crismon v. United States, supra* at 357.

known to defense counsel. He therefore requested that the district court hold an evidentiary hearing on the motion "to determine whether perjured testimony was used at trial and if so, whether the Government knew of it." In support of this motion, petitioner attached the affidavit of Ms. Mozee, dated August 10, 1975, attesting to: her hospitalization for mental illness; ill treatment by the Government; awareness on the part of the prosecuting attorney at the time he put her on the stand that she had "spent (4) days in the mental ward" of an Arizona hospital; and her feeling that the Government had "used" her.

In its reply to the above motion, the Government denied any knowledge that Ms. Mozee was hospitalized and treated for mental illness and stated:

"Indeed, Emma Mozee never was *treated* for mental illness. Mozee complained only of a physical illness which was apparently the illness treated at her four day stay at Maricopa City Hospital. Miss Mozee's answer to the question propounded by defense counsel at trial as to whether or not Miss Mozee was treated for mental illness is consistent with what the government believed to be the truth."

For that reason, it asserted that there was nothing to be disclosed under *Brady v. Maryland, supra.* In support, the Government appended the affidavit of Charles F. Scarlata, the United States Attorney charged with prosecution of petitioner. According to the affidavit, Emma Mozee was relocated by the Government approximately one year before the trial because her life was believed to have been endangered by her agreement to cooperate with the Government. After the murder of one of her "intimate" friends under circumstances that "indicated to [Scarlata] . . . and to the investigators that it was done to prevent . . . [that friend] from testifying and as a message to any other potential witness," Ms. Mozee was again relocated by the Government to Phoenix, Arizona. Scarlata further states that he was aware prior to the trial that Ms. Mozee "suffered from a blood disease which required period-

ic out patient care," that at one point she "passed out in the Federal Building in Phoenix as a result of this physical illness," and that Ms. Mozee told him that "when she passed out she was committed to the mental ward of a hospital for treatment." However, the affidavit indicates that it was Scarlata's understanding "that the commitment was not for mental treatment, but rather to treat her physical affliction. . . [His] impression of why the commitment was to the mental ward of the hospital was that the normal wards were full and nothing was available, and/or that the commitment was in some way a spiteful retaliation, because of Mrs. Mozee's requests. . . . [A]t no time did she ever indicate . . . that she was treated for any mental illness. . . . [And] when she was asked if she had ever been hospitalized for mental illness, her commitment referred to above, never even entered my mind, because it was my understanding that she was admitted for the treatment of physical illness rather than a mental one."

This motion and the reply were referred to the United States Magistrate, who issued a Report and Recommendation in favor of its dismissal, both of which were adopted and incorporated in the district court order as the opinion of that court. The Report, after expressing doubt that "this evidentiary matter could properly be raised in a [28 U.S.C. § 2255] motion to vacate sentence," offered two bases for the recommended disposition of petitioner's motion:

1. "[E]ven assuming Mozee was hospitalized in a mental institution for a period of four days, and even assuming that such hospitalization would reflect upon the witnesses' credibility, the substantive evidence of Mozee was so substantial that it cannot be said that such a brief period of hospitalization would render her testimony incompetent or incredible. Thus error, if any, resulting from a denial of hospitalization, was harmless beyond a reasonable doubt."

2. Assuming this evidentiary matter to have been properly raised, the "petitioner's claim that the Government knowingly introduced perjured testimony into

trial, and failed to make the petitioner aware of this fact is refuted by the record," making an evidentiary hearing unnecessary. *See* Appendix at 8a–11a.

Petitioner contends that the district court "was in error to dismiss without a hearing [his] . . . motion pursuant to 28 U.S.C. § 2255 which, on the basis of an affidavit from the principal prosecution witness, claimed post-trial and post-appeal discovery of government misconduct." Brief of petitioner at 3. He urges that the evidentiary hearing was mandated because:

"His claim was of constitutional magnitude, the basis for the claim was discovered after trial and after appeal (Affidavit of Mozee·App. p. 1a); the material facts thereto were not on the record; the government's response placed the crucial facts in dispute; and an adversary hearing was the only available method by which to examine witnesses and documents, and develop a fair and complete record for determination by the district court, and for possible appellate review."

*Id.* at 4.

## II.

In determining whether it was proper for the district court to act upon petitioner's motion without a hearing, we are guided by the following language from *Kaufman v. United States*, 394 U.S. 217, 227 n. 8, 89 S.Ct. 1068, 1074, 22 L.Ed.2d 227 (1969):

"Where a trial or appellate court has determined the federal prisoner's claim, discretion may in a proper case be exercised against the grant of a § 2255 hear-. ing. Section 2255 provides for hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . .' . . . Similarly, where the trial or appellate court has had a 'say' on a federal prisoner's claim, it may be open to the § 2255 court to determine that on the basis of the motion, files, and records, 'the prisoner is entitled to no relief.'"

■ The narrow question posed by this appeal is whether the district court erred in denying Brown's petition without conduct-

ing an evidentiary hearing. As *Kaufman* instructs a § 2255 motion can be denied without a hearing only if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." The record in this case reveals that the information presently relied upon for § 2255 relief was known to both the defendant and his counsel at the time of and during trial, a fact fatal to the § 2255 claim. See *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976) ("The rule of *Brady v. Maryland*, 373 U.S. 83, [83 S.Ct. 1194, 10 L.Ed.2d 215] arguably applies in three quite different situations. Each involves the discovery, *after trial*, of information which had been known to the prosecution *but unknown to the defense*." (Emphasis added.) ) Hence, regardless of the knowledge of the Government, if the information which is the focus of the petition was known to the defense at a time when it could have been acted upon before the trial ended and if such fact is revealed by the record, no evidentiary hearing is required under § 2255. See, for example, *United States v. Kaplan*, 554 F.2d 577 at 579–580 (3d Cir. 1977).

■ Here it is apparent that Brown's attorney knew that Ms. Mozee had been hospitalized in a mental ward, since this information was made known to him before the termination of the trial by his client.

At 848 of the trial transcript, the following statements were made by Mr. Haseltine, Brown's attorney:

"I have been advised by my client, the defendant James Brown, that the witness Emma Mozee has not testified honestly concerning her history of treatment for mental disease or disorders. . . ."

The discussion continued at Tr. 849 (also contained in Brown's original appendix at 9a):

"THE COURT: Is the Court's recollection correct that she was asked on cross-examination if she had received psychiatric treatment and she said that she had not?

"MR. HASELTINE: That is my recollection of her testimony. . . .

"THE COURT: In other words, those questions were asked by you on cross-examination."

Brief for appellee at 4–5.

In effect, petitioner has really resurrected facts of which he was aware at time of trial: that Ms. Mozee may have lied about never having received psychiatric treatment.

We note that our recent case of *United States v. McCrane*, 547 F.2d 204 (3d Cir. 1976), despite superficial similarities, presents a situation very different from this one. There, as here, defendant claimed that the Government had violated the mandate of *Brady v. Maryland, supra*, by failing to produce, in response to defendant's request for all exculpatory material, evidence which might have borne upon the credibility of a key Government witness. However, in *McCrane*, the defendant was unaware until four days after conclusion of the trial that certain letters indicating that the witness had received preferential treatment from the Government even existed. Here, not only was counsel for defendant fully aware of the alleged *Brady* material, he had the opportunity to cross-examine the witness on the very matter involved. Any fault, then, would appear to lie with the witness alone, and not with the Government.

The district court, therefore, did not err in dismissing the § 2255 motion without a hearing. The order of the district court will be affirmed.

GIBBONS, Circuit Judge, dissenting.

In *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed. 791 (1935) the Court said:

[Due Process] is a requirement that cannot be deemed to be satisfied by mere notice and hearing if a State has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of Court and jury by the presentation of testimony known to be perjured. Such a contrivance by a State to procure the convic-

tion and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation. And the action of prosecuting officers on behalf of the State, like that of administrative officers in the execution of its laws, may constitute state action within the purview of the Fourteenth Amendment.

Just so with the fifth amendment. Never since *Mooney v. Holohan, supra*, has the Court departed from the rule that a prosecutor's knowing use of perjured testimony is, in and of itself, a violation of due process of law. As recently as *United States v. Agurs*, 427 U.S. 97, 103–04, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976) Justice Stevens, distinguishing the three separate situations which may be covered by the rule of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), observed:

In the first situation, typified by *Mooney v. Holohan*, 294 U.S. 103, [55 S.Ct. 340, 79 L.Ed. 791] the undisclosed evidence demonstrates that the prosecution's case includes perjured testimony and that the prosecution knew, or should have known, of the perjury.[7] In a series of

[7] [footnote omitted]

subsequent cases, the Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair,[8] and must be set

[8] *Pyle v. Kansas*, 317 U.S. 213[, 63 S.Ct. 177, 87 L.Ed. 214]; *Alcorta v. Texas*, 355 U.S. 28[, 78 S.Ct. 103, 2 L.Ed.2d 9]; *Napue v. Illinois*, 360 U.S. 264[, 79 S.Ct. 1173, 3 L.Ed.2d 1217]; *Miller v. Pate*, 386 U.S. 1[, 87 S.Ct. 785, 17 L.Ed.2d 690]; *Giglio v. United States*, 405 U.S. 150[, 92 S.Ct. 763, 31 L.Ed.2d 104]; *Donnelly v. DeChristoforo*, 416 U.S. 637[, 94 S.Ct. 1868, 40 L.Ed.2d 431].

aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. . . . In those cases the Court has applied a strict standard of materiality, not just because they involve prosecutorial misconduct, but more importantly because they involve a corruption of the truth-seeking function of the trial process.

Justice Stevens went on to distinguish two other situations covered by *Brady v. Mary-*

land, supra, as to which a more significant showing must be made; (1) pretrial requests for specific information, and (2) a general pretrial request for "*Brady* material." 427 U.S. at 105–106, 96 S.Ct. 2392. Finally he discussed the prosecutor's duty to volunteer exculpatory information in the absence of a request. In *Agurs* it was an arrest record which was withheld, "and [that] did not even arguably give rise to any inference of perjury." 427 U.S. at 114, 96 S.Ct. at 2402. The Court held that the prosecutor's failure to disclose it did not violate due process. Justice Stevens' careful distinction of the knowing use of perjured testimony as a separate due process violation preserves intact the *Mooney v. Holohan* rule, which antedated *Brady v. Maryland* by 28 years.

As recently as *United States v. McCrane,* 547 F.2d 204, 205 (3d Cir. 1976) (*per curiam*), this Court, analyzing *Agurs,* recognized the distinction between the *Mooney v. Holohan* rule and the two other situations covered by *Brady v. Maryland.* We wrote:

> In the first situation, typified by such cases as *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); and *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), the convictions must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. This strict standard is applicable because the truth-seeking function of the trial has been compromised and prosecutorial misconduct was present.

The majority attempts to avoid the effect of the *Mooney v. Holohan* rule by legerdemain. In footnote 2, for example, appears the statement, "also, petitioner has failed to show that the Government knew of the alleged perjury at the time it used the testimony of Ms. Mozee." The record is otherwise. The affidavit of Ms. Mozee filed in support of the § 2255 motion states:

> I, Emma C. Mozee, would like to explain ny extent in my testimony against James Brown, 39385. *I had mental treatment at Maricopa County Hospital* in Phoenix because of the strain I was under from threats made to me and my children and also I was not treated right by the United States Government. *The prosecuting attorney in the case was very much aware of the fact that I spent (4) days in the mental ward of Maricopa County Hospital when he put me on the stand.* I was under extensive pressure from the government and I was just as afraid not to testify as I was of the threats made towards me for testifying. The hospital was told over the phone by special agent Wheatherbee in Pittsburgh to put me in the hospital. I passed out in the elevator in the Federal Building in Phoenix Arizona and was taken by ambulance to the county hospital. To this day, I do not know if my hospital bill has been paid by the government, yet I left and didn't take anymore money from the government and they still said I had to testify in that case. So I feel I wasn't justly treated by the government. I was used. (Emphasis supplied).

The italicized language is an unequivocal statement that the prosecuting attorney was aware that she had spent time in a hospital mental ward. In response to the motion the government filed the affidavit of the prosecuting attorney, which concedes that he was aware of the hospitalization and was told by Emma Mozee that she had been "committed to the mental ward of the hospital for treatment."

When Ms. Mozee was on the stand, during cross examination she unequivocally denied that she had ever received psychiatric treatment. It is undisputed that she had previously told the prosecuting attorney otherwise, that he did nothing while she was on the stand to call that prior inconsistent statement to the attention of the court or the jury, and that when the defense attorney sought to have Ms. Mozee recalled for further cross examination on the subject, he actively opposed her recall, still without telling the court or defense counsel that her testimony was inconsistent with what she had told him.

The government's justification is in a paragraph of the prosecuting attorney's affidavit. Admitting knowledge that Ms. Mozee was "committed to the mental ward of a hospital for treatment," it draws the fine distinction that ". . . at no time did she ever indicate to me that she was treated for any mental illness." Did he think she was in a mental ward for cancer? The prosecutor indicates that it was his "impression" that the reason for commitment to the mental ward "was that the normal wards were full and nothing was available, and/or that the commitment was in some way a spiteful retaliation, because of Ms. Mozee's requests." Against this "and/or" "impression" the prosecutor elected to let stand her flat denial of receiving mental treatment and opposed her recall for further cross examination on the question.

The majority concludes that the appellant Brown's attorney knew at the time of trial what the prosecutor knew. In reaching that conclusion it has substituted speculation for record fact. What the record discloses is that the defense attorney suspected that Ms. Mozee may have lied on the stand. That was obvious from the cross examination. But nothing in the record supports the slightest inference that the defense attorney was aware of Ms. Mozee's prior inconsistent statement to the prosecuting attorney, who was then and there opposing his effort to have her recalled for further cross examination.

The most indefensible part of the majority opinion, however, is saved for the discussion of *McCrane*, which is described as having "superficial similarities." The majority reasons:

> However, in *McCrane*, the defendant was unaware until four days after conclusion of the trial that certain letters indicating that the witness had received preferential treatment from the Government even existed. Here, not only was counsel for defendant fully aware of the alleged *Brady* material, he had the opportunity to cross-examine the witness on the very matter involved. Any fault, then, would appear to lie with the witness alone, and not with the Government.

In the second quoted sentence the majority repeats its misstatement of the record as to the extent of defense counsel's knowledge, and then relies on the opportunity for cross examination. There was such an opportunity, and the witness frustrated it by lying. If defense counsel knew of the witness's prior inconsistent statement to the prosecutor, cross examination would have confronted her with it. By letting the lie stand and opposing recall of Ms. Mozee, the prosecutor prevented effective cross examination. Nevertheless, the majority concludes that "[a]ny fault . . . would appear to lie with the witness alone, and not with the Government." The majority decision's signal to prosecuting attorneys is clear. They are now free to permit government witnesses to testify inconsistently with prior statements made to the government, and to judge for themselves whether the testimony on the stand is truthful. That judgment will usually if not invariably be made on the basis of whether the version testified to is deemed more favorable to the government case than the version in the prior inconsistent statement. Apparently the *Mooney v. Holohan* rule is dead in the Third Circuit. It should have received a more decent requiem.

The issue in this case is not whether the § 2255 petition should have been granted or denied, but only whether it should have been *summarily* denied. Petitioner's allegations were not "so 'vague [or] conclusory' . . . as to warrant dismissal for that reason alone." *Blackledge v. Allison*, —— U.S. ——, ——, 97 S.Ct. 1621, 1630, 52 L.Ed.2d 136 (1977); *Machibroda v. United States*, 368 U.S. 487, 495, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). Neither were these allegations, when viewed in the context of the two affidavits before the court, " 'so palpably incredible,' . . . so 'patently frivolous or false' . . . as to warrant summary dismissal." *Blackledge v. Allison, supra; Machibroda, supra; Pennsylvania ex rel. Herman v. Claudy*, 350 U.S. 116, 119, 76 S.Ct. 223, 100 L.Ed. 126 (1956).

I would reverse and order a § 2255 hearing.