UNITED STATES of America

v.

Michael ZOMBER

No. CRIM.03–46–02.

United States District Court,
E.D. Pennsylvania.

Aug. 2, 2005.

---

### *MEMORANDUM OPINION AND ORDER* ·

RUFE, District Judge.

On December 13, 2003, a jury convicted Defendant Michael Zomber of one count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. Zomber, represented by new counsel, filed a Motion to Vacate His· Conviction and for Entry of Judgment of Acquittal or a New Trial, which this Court denied on February 28, 2005. Now, on the eve of his sentencing, Zomber has filed a Motion for Vacatur of his conviction in light of a recently discovered alleged *Brady* violation by the government. For the following reasons, Zomber's motion is denied.

### *DISCUSSION*[1]

Over the course of several years, Zomber and his co-defendant Richard Ellis

---

**54.** Petitioner did not present any witnesses at the evidentiary hearing.

**1.** For an exhaustive factual background, see this Court's February 28, 2005 Memorandum

conspired to make false and misleading statements to induce Joseph Murphy, an antique firearms collector, to purchase numerous antique firearms at excessive prices. At Zomber's trial,[2] the government presented evidence and argued to the jury that Zomber had helped Ellis take advantage of Ellis' agency relationship with Murphy to mislead Murphy about the value of the handguns he was purchasing and to reap substantial profits in addition to Ellis' commission.

Prior to the government's initiation of criminal proceedings against Zomber and Ellis, Murphy filed a civil suit against Ellis relating to these handgun purchases. On or about December 6, 2001, Ellis and Murphy entered into a Settlement Agreement and Release (the "Settlement Agreement") pursuant to which Murphy agreed to dismiss his civil suit against Ellis. This Settlement Agreement contained the following language:

> After full and complete discovery and investigation, Mr. Murphy, ISE [Investment Securities Exchange, Inc.] and Mr. Ellis agree that their failure to enter into a formal written agreement spelling out the parties' duties resulted in confusion and left it unclear what, if any, duties each party owed to the other parties in connection with their relationship and their transactions. Mr. Murphy, ISE and Mr. Ellis acknowledge and agree that they did not enter into a formal written agency agreement specifying that either ISE or Mr. Ellis was to act as Mr. Murphy's agent. Mr. Murphy further acknowledges and agrees that the evidence as a whole does not support any claim of fraud or intentional misconduct against ISE and/or Mr. Ellis. The Parties stipulate and agree that the exchange of consideration herein settles and resolves disputed non-intentional negligence and breach of contract claims, and that (other than the mutual release of claims) no consideration has been paid or allocated to the settlement of any claims of fraud and/or intentional misconduct.

Zomber now contends that the government failed to turn over this agreement, and that its failure to do so constitutes a *Brady* violation.

In *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The Court more recently set forth three elements to a *Brady* violation: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."[3] Therefore, to succeed on his motion, Zomber must prove: 1) that the government did not disclose the Settlement Agreement[4]; 2)

---

Opinion and Order at 358 F.Supp.2d 442. Nevertheless, for the sake of clarity, we reiterate those facts relevant to the instant motion.

**2.** Ellis pleaded guilty on February 24, 2003.

**3.** *Strickler v. Greene,* 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

**4.** The parties spend considerable portions of their briefs disputing whether it is the government or Defendant who has the burden to prove nondisclosure here. Although, as the Third Circuit itself has remarked in dictum, "[t]here is a surprising dearth of precedent regarding the burden of proof of nondisclosure of *Brady* evidence," the Court need not decide this issue here. *See Slutzker v. Johnson,* 393 F.3d 373, 386 n. 13 (3d Cir.2004); *but see United States v. Pelullo,* 399 F.3d 197, 209 (3d Cir.2005) ("To establish a due process violation under *Brady,* then, 'a *defendant* must show that: (1) evidence was suppressed; (2)

that the Settlement Agreement was favorable to him; and 3) that he suffered prejudice as a result of the government's failure to disclose it.

In its response to Defendant's Motion, the government disputes the allegation that the government suppressed the Settlement Agreement. To resolve this factual dispute, the Court conducted an evidentiary hearing at which Defendant's trial counsel, Gilbert Scutti, and Defendant's brother, Peter Zomber, testified on behalf of Defendant, and the prosecutor, Robert Goldman, testified on behalf of the government.[5]

At this hearing, Mr. Scutti testified that he had never received the Settlement Agreement in discovery, and that he had never seen the document until well after the trial was complete.[6] However, Mr. Scutti also conceded that despite his awareness of Ellis' settlement with Murphy, he never specifically requested the Settlement Agreement during discovery partly because he "would never dream that it would contain this kind of language." 6/30/05 N.T. at 59. Furthermore, Mr. Scutti testified that even if he had had the Settlement Agreement, he would not have used the Agreement at trial if its use would have resulted in the admission of Ellis' guilty plea. *Id.* at 70.[7]

In contrast with Mr. Scutti's testimony, Mr. Goldman testified that he had "no doubt whatsoever" that he produced two copies of the Settlement Agreement in a discovery package to Mr. Scutti on March 20, 2003. *Id.* at 108–09. First, Mr. Goldman explained his procedure for producing discovery:

> What I do in all my cases is I—at the time of discovery, I personally go through the documents that I have, the agents' reports, and I make a determination of what is to be produced pursuant to the discovery rules. I then provide it to my secretary, my secretary will prepare a letter. Generally speaking, if there is a multitude of documents, I have a standard discovery letter that goes out; when that happens, the secretary makes two copies, sends one to the defense and puts the other copy of what she sent to the defense in a file that's marked as discovery. And that standard practice which I do in all my cases was performed in this case.

*Id.* at 91.[8] Mr. Goldman further testified that the March 20, 2003 discovery letter was the standard form of letter he typically used to produce discovery, and that he followed the same procedure for producing discovery in this case. *Id.* at 95. Pursuant to this procedure, Mr. Goldman creat-

---

the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material either to guilt or to punishment.' ") (emphasis added) (quoting *United States v. Dixon,* 132 F.3d 192, 199 (5th Cir.1997)). Even if the burden were placed on the government to demonstrate that it disclosed the Settlement Agreement, the government has met that burden here.

5. *United States v. Dansker,* 565 F.2d 1262, 1264 (3d Cir.1977) ("Where the submission of written affidavits raises genuine issues of material fact and where, as here, the *Brady* claims ... are neither frivolous nor palpably incredible, an evidentiary hearing should be conducted.").

6. Peter Zomber also testified that he had never seen the Settlement Agreement prior to trial, and that as he was intimately involved in all details of his brother's defense, he would have known had the defense received the Settlement Agreement. 7/20/05 N.T. at 81–84.

7. The Court did not have the opportunity to rule on the admissibility of co-conspirator Ellis' guilty plea at trial because the government did not attempt to offer the plea into evidence.

8. The government also introduced an affidavit from Mr. Goldman's secretary corroborating Mr. Goldman's account of this procedure.

ed a file marked "Discovery" into which he or his secretary placed copies of every document that had been turned over to Defendant in discovery in this case. *Id.* at 99–100. The government introduced a copy of this file, in the exact condition in which Mr. Goldman found it when the instant motion was filed, into evidence at the evidentiary hearing. *See id.* at 99, 122; Exh. G–3. This file contained two copies of the Settlement Agreement attached to the March 20, 2003 letter. *Id.* at 100–01

Mr. Goldman also testified that he had a "specific recollection" that the Settlement Agreement was actually produced to Defendant because the document was so important. *Id.* at 101–02. In fact, the Settlement Agreement was so important that it made Mr. Goldman re-evaluate whether to proceed with Defendant's prosecution. *Id.* at 102–03. Furthermore, knowing that he had produced the Agreement, Mr. Goldman prepared for trial aware of the possibility that Mr. Scutti might cross-examine Mr. Murphy about it. *Id.* at 103.

Mr. Goldman's detailed testimony of his procedures for producing discovery and his specific recollection that he produced the Settlement Agreement to Mr. Scutti on March 20, 2003 is irreconcilable with Mr. Scutti's sometimes cloudy recollections that he never received the Settlement Agreement, was unaware of its contents, and/or did not want the jury to know about

it anyway.[9] Thus, the Court must make a credibility determination. After reviewing the evidence and observing the witnesses' demeanor at the evidentiary hearing, the Court finds Mr. Goldman's testimony to be credible.[10] Therefore, the Court finds that the prosecution produced the Settlement Agreement to Zomber in a discovery package dated March 20, 2003. Accordingly, Zomber's claim of a *Brady* violation fails because Zomber has failed to show that the government suppressed the Settlement Agreement. Having reached this conclusion, the Court need not address the remaining elements of Zomber's *Brady* claim.

### CONCLUSION

For the foregoing reasons, Defendant's Motion for Vacatur of his conviction is denied.[11] An appropriate Order follows.

### ORDER

**AND NOW,** this 2nd day of August, 2005, after an evidentiary hearing, and upon consideration of Defendant Michael Zomber's Motion for Vacatur of his conviction and supporting Memorandum of Law, and his post-evidentiary hearing submissions [Docs. ## 77, 78, 87, 90], and the Government's responsive submissions thereto [Docs. ## 82, 88, 89], it is hereby **ORDERED** that the Motion is **DENIED.**

---

**9.** On cross-examination, Mr. Scutti admitted that he was apprised of the settlement between Ellis and Murphy well before Defendant's trial and that he was aware that several antique guns changed hands in the settlement. 7/20/05 N.T. at 56–58. Mr. Scutti further testified that he never specifically requested the Settlement Agreement in part because he did not want the jury to know about the existence of the civil lawsuit between Murphy and Ellis and the dollar amounts related to that lawsuit. *Id.* at 59.

**10.** In light of Mr. Scutti's hazy and inconsistent recollection of the events during discov-

ery, the Court found his testimony to be unconvincing. Similarly, the Court also found Peter Zomber's testimony neither convincing nor corroborative of Mr. Scutti's recollections, particularly in light of his obvious interest in seeing his brother's conviction reversed.

**11.** The Court defers ruling on Defendant's allegations of ineffective assistance of counsel claims in relation to discovery of the Settlement Agreement until such time that these claims may be submitted for review in a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2255, at which time further evidentiary proceedings may be warranted.

It is further **ORDERED** that sentencing will be rescheduled within thirty (30) days of the date of this Order.

It is so **ORDERED**.