**UNITED STATES of America, Petitioner,**

**v.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, Respondent;**

**Maurice H. FRIEDMAN and John Rosselli, Real Parties in Interest.**

**UNITED STATES of America, Plaintiff-Appellant,**

**v.**

**Maurice H. FRIEDMAN, Defendant-Appellee.**

**UNITED STATES of America, Plaintiff-Appellant,**

**v.**

**John ROSSELLI, Defendant-Appellee.**

**Nos. 74–1827, 74–2134 and 74–2135.**

United States Court of Appeals, Ninth Circuit.

Jan. 20, 1975.

Certiorari Denied May 12, 1975.
See 95 S.Ct. 1949.

Hugh W. Blanchard, Asst. U. S. Atty. (argued), Los Angeles, Cal., for petitioner-appellant.

Marvin G. Claitman (argued), Los Angeles, Cal., for appellee Friedman.

Leslie Scherr (argued), Washington, D. C., for appellee Rosselli.

Before WRIGHT and CHOY, Circuit Judges, and BURNS,* District Judge.

OPINION

CHOY, Circuit Judge:

The Government appeals from district court orders reducing fines assessed against Rosselli and Friedman. The Government also petitions this court for a writ of mandamus ordering the district court to vacate its orders. We grant the writ.

*Statement of Facts*

Friedman and Rosselli were tried together in the Central District of California and convicted on December 2, 1968 on several counts for violating 18 U.S.C. §§ 371, 1952, 2314.[1] Rosselli was sentenced to five years imprisonment, fined $55,000 and was ordered to "stand committed" until the fine was paid. Friedman's sentence consisted of a six year prison term, a fine of $100,000 and a "stand committed" order until the fine was paid. On December 22, 1970, this court affirmed on all counts the judgment against Rosselli, and reversed Friedman's conviction on one count while affirming all remaining counts. On February 22, 1971 the Supreme Court denied Rosselli's petition for a writ of certiorari and filed the order that day. United States v. Roselli [sic], 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971). However, notification of the Supreme Court's action was not mailed to this court until March 2, 1971 and not received until one

* Honorable James M. Burns, United States District Judge for the District of Oregon, sitting by designation.

1. Rosselli was also convicted on one count for violation of 26 U.S.C. § 7206(1).

day later. Notification of the denial of certiorari was never sent to the district court.

On June 28, 1971 Rosselli filed in the district court a motion for reduction of sentence. On October 18, 1971 the district court ordered a reduction in the term, denied for the time being the request to reduce the fine, but specifically stated it was retaining jurisdiction over the matter of the fine. Several months later, Rosselli moved for a reduction of the fine, but the court on March 6, 1973 merely vacated the "stand committed" order. A year later, Rosselli again moved the court to reduce the fine, and on March 25, 1974 the court reduced the fine to $10,000.

Friedman originally moved for a reduction of sentence on February 23, 1971, 62 days after the district court received this court's mandate affirming his conviction. On May 3, 1972, the court reduced Friedman's sentence to time served. Almost two years later, on February 4, 1974, Friedman filed a motion to clarify the order reducing sentence or, in the alternative, to reduce sentence. The district court on March 25, 1974 reduced the fine to $75,000 and then, in a modifying order on April 18, 1974, further reduced the fine by $25,000.

Uncertain whether the proper procedure to obtain review in this court of the sentence reduction orders was by appeal or by petition for a writ of mandamus, the Government pursued both methods. On April 24, 1974 the Government appealed directly from the March 25 orders, and on May 8, 1974 filed a petition for writ of mandamus to vacate the district court orders of March 25 and April 18, 1974. The appeals and the petition have been consolidated for disposition by this court. However, since we conclude that a writ should issue in this case, we need not consider the direct appeal nor decide whether an order to reduce sentence under F.R.Crim.P. 35 is appealable by the Government. United States v. Mehrtens, 494 F.2d 1172, 1174 (5th Cir. 1974).

*Petition for Writ of Mandamus*

Friedman and Rosselli, the real parties in interest in the action for the writ, contend that this court should in the exercise of discretion deny the petition without ever reaching the merits. Although it is well established that granting of a writ of mandamus is an extraordinary remedy and lies in the sound discretion of the court [United States v. Lane, 284 F.2d 935, 939 (9th Cir. 1960); United States v. Carter, 270 F.2d 521, 524 (9th Cir. 1959)], writs have been issued, in cases similar to the present one, directing a district court to vacate an invalid order suspending sentence. *See e. g.,* Ex parte United States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916); United States v. Regan, 503 F.2d 234 (8th Cir. 1974); United States v. Mehrtens, *supra;* United States v. Gibbs, 285 F.2d 225 (9th Cir. 1960); United States v. Lane, *supra.* Friedman and Rosselli do not contend that laches or other equitable circumstances exist militating against the writ [see United States v. Old, 426 F.2d 562 (3d Cir. 1970); United States v. Carter, *supra*], and we find no valid reason to refrain from considering the petition.

*Rule 35*

F.R.Crim.P. 35 provides in part:

> The court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction.

Because F.R.Crim.P. 45(b) states that the court may not enlarge the period for taking action under Rule 35, the 120 day requirement in Rule 35 is a mandatory one. Thus, unless the 120 day requirement is met, the court has no jurisdiction or power to alter sentence. United States v. Regan, 503 F.2d at 237; United States v. Mehrtens, 494 F.2d at 1176;

Peterson v. United States, 432 F.2d 545, 546 (8th Cir. 1970); United States v. Ellenbogen, 390 F.2d 537, 541 (2d Cir.), cert. denied 393 U.S. 918, 89 S.Ct. 241, 21 L.Ed.2d 206 (1968); Irizzary v. United States, 58 F.R.D. 65, 66–67 (D.Mass. 1973). *See also* United States v. Marchese, 341 F.2d 782, 788 (9th Cir.), cert. denied 382 U.S. 817, 86 S.Ct. 41, 15 L.Ed.2d 64 (1965).

*Rosselli's Case*

The Government contends that the 120 day period for Rosselli began to run on February 22, 1971, the day the Supreme Court denied Rosselli's petition for certiorari. Since Rosselli's original motion to reduce sentence was not filed until June 28, 1971—125 days after the Supreme Court action—the Government argues that the district court was without power later to reduce sentence on March 25, 1974.[2]

The validity of this argument depends on an interpretation of Rule 35, specifically the phrase: " . . . within 120 days *after entry* of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction." (emphasis added) Rosselli contends that "entry" does not refer to entry on the Supreme Court docket sheet, but to entry or filing at the court of appeals or at the district court. If Rosselli's contention is correct, his motion was timely since notice of denial of the petition for certiorari was not filed in this court until March 3, 1971 and still has not been filed at the district court.

Before the 1966 amendments to Rule 35, the Rule read in part: "The court may reduce a sentence . . . within 60 days *after receipt* of an order of the Supreme Court denying an application for a writ of certiorari." (emphasis added) The Advisory Committee Note to Amended Rule 35 states the reason for the change:

> If the writ were denied, the last phrase of the rule left obscure the point at which the period began to run because orders of the Supreme Court denying applications for writs are not sent to the district courts. See Johnson v. United States, 235 F.2d 459 (5th Cir. 1956). . . . The amendment makes it clear that . . . the 120-day period commences to run with the entry of the order or judgment of the Supreme Court.

Thus, the history of the rule and the Advisory Committee Note are consistent with the plain meaning of the amended rule that the 120 day period begins to run the day of the Supreme Court order and entry on *its own* docket sheet. *See* Peterson v. United States, 432 F.2d 545, 546 (8th Cir. 1970). The district court, therefore, had no power to reduce Rosselli's fine on March 25, 1974.[3]

*Friedman's Case*

It is undisputed that Friedman's original motion to reduce sentence, filed on February 23, 1971, was filed well within the 120 day period. Acting on the motion, the district court on May 3, 1972 ordered reduction of the prison term to time served.[4] Friedman's second motion to reduce sentence was not filed until February 4, 1974, more than three years after the original 120 day period began to run and almost two years after entry of the "time served" order. Believing that it had jurisdiction to consider the second motion, the court reduced Fried-

2. Rosselli contends that the Government's failure to raise jurisdictional defects at the pre-March 25, 1974 hearings on sentence reduction precludes it from raising that issue here. This argument is without merit. *See* Mansfield, Coldwater & Lake Michigan Ry. Co. v. Swan, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884).

3. The court order of October 18, 1971, reducing the prison sentence to time served, and order of March 6, 1973, vacating the "stand committed" order, are not challenged on appeal nor are subjects of the writ petition. Therefore, our decision with respect to the validity of the March 25, 1974 order in no way affects the validity of the earlier orders.

4. This court order is not challenged by the Government and is not before us on appeal or on the petition for writ of mandamus.

man's fine on March 25, 1974 and again on April 18, 1974.

Friedman's contention that the court had power to modify sentence in 1974 is based solely on Leyvas v. United States, 371 F.2d 714 (9th Cir. 1967), which held that a court may act beyond the Rule 35 time period if defendant within the period filed a motion to reduce sentence. *Id.* at 719. Although *Leyvas* was decided under former Rule 35, which provided for only a 60 day time period, we find that the case is equally applicable to the new rule's 120 day limit. *See* United States v. Polizzi, 500 F.2d 856, 896 n. 73 (9th Cir. 1974), petition for cert. pending; Fuentes v. United States, 371 F.Supp. 92, 94 (D.Puerto Rico 1973); United States v. Ursini, 296 F.Supp. 1152, 1153 (D.Conn. 1968). The literal language of the rule does define the period not as the time within which the motion may be made, but as the time within which the court may act. However, as long as the district judge acts with reasonable speed after the timely motion is filed, the time limit should be flexible enough to give him an opportunity to hear and consider new evidence regarding the appropriateness of the sentence.

The extension of *Leyvas* to amended Rule 35 cases, however, does not bolster Friedman's position because the decision is wholly inapplicable to the present case. In *Leyvas,* only *one* motion to reduce sentence was filed and the hearing on that motion was held just eight days after expiration of the 60 day period. On the same day of the hearing the court orally modified sentence, and 11 days later—merely nineteen days beyond the 60 day period—the court entered its formal order. 371 F.2d at 719.

In distinct contrast, the challenged court order here was entered more than three years after expiration of the original 120 day period and was made pursuant to a *second* motion to reduce sentence, a motion totally new and separate from the original one which had been filed and acted upon several years earlier.[5] Friedman's motion of February 4, 1974 cannot relate back to his original timely motion to reduce sentence, and the court on March 25 and April 18, 1974 lacked power to consider the new motion. *See* United States v. Regan, 503 F.2d 234, 237 (8th Cir. 1974); United States v. Hughes, 36 F.R.D. 25, 26 (S.D.N.Y.1964).

Even if the second motion was, as Friedman contends, merely one for clarification of the first order or even if the district court on May 3, 1972 purported to "retain jurisdiction" over the sentence, the court's action on March 25 and April 18, 1974 cannot be upheld. To rule otherwise would all but nullify the 120 day time limit and would undermine completely the purpose of Rule 35 which was enacted, in part, to limit the period over which the district court has discretionary control over its own sentences.[6] *See* Original Committee Note to Rule 35. *Leyvas* does not hold that a district court may retain jurisdiction over a sentence indefinitely, and no authority supports such a proposition.

Petition for writ of mandamus granted.

BURNS, District Judge (dissenting):

I dissent. I would deny mandamus relief because this is an ordinary case, while mandamus is an extraordinary remedy (United States v. Lane, 284 F.2d 935, 939 (9th Cir. 1960); United States v.

5. The contention that the second motion was merely one for clarification of the first order modifying sentence and that the district judge on May 3, 1972 intended to "retain jurisdiction" over the sentence is without support in the record.

6. As Professor Moore has noted, "Some limitation on the court's power seems to be necessary, for after a lapse of time the peculiar ability of the court to determine sentence gives way to the presumably greater competence, and knowledge, of penal authorities." 8A J. Moore, Federal Practice ¶ 35.02 [1] at 35–4 n. 5 (2d ed. 1974); *cf.* United States v. Smith, 331 U.S. 469, 476, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947). Furthermore, some limitation is necessary to protect the district court judge from continual importunities while the defendant is serving his sentence.

Carter, 270 F.2d 521, 524 (9th Cir. 1959)), and should be saved for extraordinary cases.

The effect of the majority opinion is that Rosselli's original motion to reduce, having been filed June 28, 1971, or 128 days after the Supreme Court acted, was beyond the power of the District Court to grant. For reasons known best to the Prosecutor, no challenge was posed to the Court's action of October 18, 1971, reducing the term of Rosselli's confinement. Rosselli on January 12, 1973, filed a further motion for reduction or modification of the fine. In response, the Court on March 6, 1973, vacated the "stand committed" order.[1] Again the Prosecutor did nothing, though this later action was based upon a motion which came nearly a year and a half after the 120 days had run. It was not until the March 1974 court action reducing the fine that the Prosecutor bothered to challenge the Court's action. In the absence of an adequate explanation by the Prosecutor as to why he did not see fit to challenge either the District Judge's original reduction of the prison term or the later elimination of the "stand committed" clause, I see no reason whatsoever for this Court to conclude that this is an extraordinary situation.[2]

I had always thought that sparing use of the extraordinary writs such as mandamus was a sound principle of judicial administration. If lawyers know they cannot run the mandamus track to the Court of Appeals in routine cases, then the time and talent of the Court of Appeals will be expended on cases in which appeal is a matter of right, or on those rare situations in which an extraordinary writ is absolutely necessary to prevent a grave injustice or to avoid some severe and pervasive procedural chaos. The serious backlog in the civil docket in this Court provides added reason why the extraordinary writs should be used sparingly and not passed out in profligate fashion.

The effect of this case will be that U. S. Attorneys, the Bureau of Prisons, or even the Board of Parole will be encouraged to pepper this Court with petitions for mandamus whenever the mood strikes and the District Judge acts after the 120 days have passed. I say this because of the language in the majority opinion which suggests that if the District Judge does not act "with reasonable speed after the timely motion is filed," he will lose jurisdiction. I know from my own experience (and from the experience of other District Judges) that even when the motion is filed within 120 days, often a considerable amount of time elapses before the Judge can act. Many District Judges do as I myself do when a Rule 35 motion is received: I ask the Bureau of Prisons for a report on the status, conditions and progress of the Defendant in the institution in which he is confined. It usually takes at least 60 or 90 days for a significant report to be prepared by the Bureau of Prisons. From time to time, the report itself suggests the necessity for exploration and further study of particular aspects of the case. In such an event, a request to the Bureau of Prisons may well result in a further delay of one or two months. Hence, the majority result produces a situation in which, at the whim of some lower level employee in the Board of Parole or Bureau of Prisons, or perhaps in the Justice Department or Prosecutor's Office, a mandamus challenge will be flung to the action of the District Courts, thereby adding to this Court's already serious stack of unfinished civil business.

I would do here as this Court did in *Carter, supra.* There the District Judge placed two 18-year-old boys and a 19-year-old girl on probation, even though the existent provisions of the 1956 Nar-

1. Even though the Court specifically stated it was "retaining jurisdiction" over the matter of the fine, in light of Rule 35 as construed by the majority, such a statement was unavailing.

2. While the dates differ somewhat as to Defendant Friedman, the considerations in his case call for no different result, whether my view or that of the majority prevails. I omit the details for brevity's sake.

cotics Control Act specifically forbade such probationary sentences. United States v. Lane, *supra.* But the Government dilly-dallied (in one case, a year, and in the other only four months!) before seeking mandamus relief. The Court exercised its discretion—wisely, I believe—by withholding mandamus relief. Nor do I believe that promptness by the Prosecutor is the only measure of extraordinariness. But it is surely one of its hallmarks.

As the majority notes in its opinion, the Government "double shot" in this case by filing notice of appeal as well as seeking to invoke our mandamus jurisdiction. If my view on mandamus were to have prevailed, then it would be necessary for us to determine whether an appeal would lie under the provisions of the statute governing an appeal by the Government. 18 U.S.C. § 3731. However, since my view as to the mandamus has not prevailed, it seems unnecessary for me to discuss the question of whether the order is appealable.