565 F.2d 1262
 UNITED STATES of America
v.
Norman DANSKER, Appellant in No. 77-1751, Joseph Diaco,
Steven Haymes, Warner Norton, Donald Orenstein, Nathan L.
Serota, Andrew Valentine, Investors Funding Corporation of
New York, and Valentine Electric Company.
Appeal of Steven HAYMES, in No. 77-1752.
Appeal of Donald ORENSTEIN, in No. 77-1753.
Appeal of Joseph DIACO, in No. 77-1761.
Appeal of Andrew VALENTINE and Valentine Electric Co., in No. 77-1762.
 Nos. 77-1751/3 and 77-1761/2.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 7, 1977.
Decided Oct. 28, 1977.
Certiorari Dismissed Jan. 24, 1978.
 
 See 98 S.Ct. 905.
 Gerald L. Shargel, Fischetti & Shargel, New York City, for appellant in No. 77-1751.
 Alan M. Dershowitz, Cambridge, Mass., for appellant in No. 77-1752.
 Richard A. Levin, Amster & Levin, Millburn, N. J., for appellant in No. 77-1753.
 Frederic C. Ritger, Jr., South Orange, N. J., for appellant in No. 77-1761.
 Edward Gasthalter, Hoffman, Pollok, Mass & Gasthalter, New York City, for appellant in No. 77-1762.
 Jonathan L. Goldstein, U. S. Atty., John J. Barry, Chief, Appeals Division, Newark, N. J., for appellee.
 Before ADAMS, VAN DUSEN and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 VAN DUSEN, Circuit Judge.
 Appellants stand convicted of violating 18 U.S.C. § 1952, including bribing the Mayor of Fort Lee, New Jersey.[1] On direct appeal, appellants raised for the first time claims that the prosecution had withheld exculpatory information in violation of the rule of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This court at that time refrained from resolving the Brady claims, remitting the defendants to move in the first instance for a new trial before the trial judge.[2] The case is now before this court on appeal from a June 3, 1977, order denying appellants' Motions For A New Trial and An Evidentiary Hearing and Discovery In Support of the Motions.[3] These appeals also challenge the trial judge's denial of motions for his disqualification and discovery and for resentencing.[4] We reverse the district court order in part and remand for further proceedings consistent with this opinion.
 In United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Court discussed the application of the Brady rule to three different situations of prosecutorial non-disclosure of exculpatory information where the information revealed that the prosecution countenanced perjured testimony, where the defense specifically requested the relevant evidence and where the defense made either a general request or none at all for exculpatory information. For each situation the Court prescribed a different standard of materiality giving rise to a duty of disclosure. See also United States v. McCrane, 547 F.2d 204 (3d Cir. 1976). Appellants' allegations of undisclosed evidence comprise two separate sets of information the so-called James Silver information and the so-called Anthony Carmanati information. This court has carefully tested both sides of allegations against the Agurs standards of materiality and accordingly resolves them differently.
 The conflicting alleged statements of Silver to the prosecutor dictated the need for an evidentiary hearing in order to determine if some exculpatory evidence related to the bribery scheme might have been developed at trial. Silver accuses Arthur Sutton, the principal prosecution witness and an undisputed co-conspirator in the bribery scheme, of committing perjury[5] and he attributes to Sutton remarks seriously undermining his credibility.[6] Taking the Silver allegations as a whole, we have concluded that the trial judge erred in holding, without an evidentiary hearing, that there was no "reasonable likelihood" that the information would have affected the verdict, United States v. Agurs, 427 U.S. at 103, 96 S.Ct. 2392.6a
 However, considerable uncertainty surrounds the matter of just which allegations Silver communicated to the prosecution. The submitted record of written affidavits and documents is less than clear on this score. Prosecution affidavits, for example, deny pre-trial receipt of several of Silver's most telling allegations. See, e. g., affidavit of Bruce I. Goldstein at 563a-566a of the joint appendix. Thus, relevant facts surrounding the Silver allegations and their communication to the prosecution remained in dispute on the written record before the trial judge. In addition, Silver's own trustworthiness and credibility have been implicated by the conflicting affidavits and other evidence. Where the submission of written affidavits raises genuine issues of material fact and where, as here, the Brady claims involving Silver are neither frivolous nor palpably incredible, an evidentiary hearing should be conducted.[7] See Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); Lee v. United States, 388 F.2d 737, 742 (9th Cir. 1968) (Stephens, J., concurring); 8A Moore's Federal Practice Par. 33.03(3) at 33-18 (2d ed. 1977).[8]
 
 
 1
 The trial judge denied appellants' request for an evidentiary hearing in part because some of the defendants "deliberately determined not to reveal to the court at the time of trial" their knowledge of Silver. See United States v. Dansker, Opinion dated June 2, 1977 (Crim. No. 74-555, D.N.J.), reproduced at 1209a. Such a conclusion is not sufficiently supported by the present incomplete written record and must be reevaluated by the trial judge after the evidentiary hearing.
 
 
 2
 The written record reveals that former counsel for defendant Dansker interviewed James Silver, in the presence of their client, during and immediately after the trial in March 1975, but have been uncooperative in discussing with present counsel exactly what Silver told them during their interviews. At the evidentiary hearing, Dansker's former attorney should be subject to compulsory process for examination as to the information Silver communicated to them during the trial and the attorneys' reasons for not utilizing this information both on cross-examination of Sutton and as a basis for calling Silver as a witness at trial. Moreover, trial counsel for the other IFC defendants, Haymes and Orenstein, were informed of the Silver interviews during the trial8a and such counsel participated in the post-trial interview of Silver. Thus, trial counsel for each IFC defendant may be examined, particularly on their reasons for not informing the trial judge of Silver's existence during the trial and, at least, at the time of filing their post-trial motions for judgment of acquittal and for a new trial.[9] Alleged exculpatory information which becomes known to the defense at a time it could have been acted upon may cure prosecutorial non-disclosure in certain circumstances. See Brown v. United States, 556 F.2d 224 (3d Cir. 1977); United States v. Kaplan, 554 F.2d 577 (3d Cir. 1977); United States v. Harris, 498 F.2d 1164 (3d Cir.), cert. denied, 419 U.S. 1069, 95 S.Ct. 655, 42 L.Ed.2d 665 (1974). The evidentiary hearing may reveal when, if at all, individual counsel and their clients learned about Silver's information and why they failed promptly to apprise the trial court of such information. Only after testimony on such matters has been heard can it be determined whether the prosecution's failure to disclose the Silver information was cured by defendants' acquisition of the information and subsequent inaction by their counsel.[10]
 
 
 3
 Under these circumstances, we believe that the district court should have made available to defense counsel compulsory process for production of Mr. Silver and the following witnesses, as well as an evidentiary hearing for the relevant admissible testimony of such witnesses:10a
 
 Jonathan Goldstein
 Bruce Goldstein
 Arthur Goldstein
 Richard Shapiro
 Arnold Bauman
 Foster Wollen
 Clyde Szuch
 
 4
 The motions for new trial of all appellants, except Joseph Diaco, see note 7, supra, should not be determined until after this evidentiary hearing.
 
 
 5
 We have pointed out in United States v. McCrane, 527 F.2d 906, 911 (3d Cir. 1975), vacated, 427 U.S. 909, 96 S.Ct. 3197, 49 L.Ed.2d 1202 (1976) (remanded for further consideration in light of United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)), that all impeaching material need not be disclosed under Brady.[11] There is nothing in Agurs or United States v. McCrane, 547 F.2d 204 (3d Cir. 1976), contrary to this rule. Appellants allege that wiretapped conversations of Anthony Carmanati, a reputed leading underworld figure subject to an undercover investigation by the State of New Jersey, reveal that Carmanati was closely associated with Arthur Sutton and that the latter may have been "a financial backer" of Carmanati's activities. At trial, on direct and cross-examination, Sutton testified to having received an usurious loan from a "Tony C.," whom he failed to name more fully and who was the head of the maintenance company for Sutton's office building. Defendants, with due diligence, could have ascertained at the time of trial the identity of this Tony C. as Anthony Carmanati.11a See United States v. Meyers, 484 F.2d 113, 116 (3d Cir. 1973). Thus, the merit of the Brady claim based on wiretap recordings allegedly made available to the prosecution rests on any non-cumulative impact that Tony Carmanati's assertions might have had on Sutton's credibility.[12] We find that these assertions of a close association with Arthur Sutton merely confirm a relationship, unrelated to the bribery scheme, which defendants could have discovered with due diligence. While the tape recordings represent direct testimony of Carmanati, they are at most cumulative in their impact on Sutton's credibility. We conclude, therefore, that the district court's evidentiary hearing need not delve into the Carmanati set of information.
 
 
 6
 We have carefully reviewed all other motions[13] and contentions made by the appellants, including those for disqualification and discovery of the trial judge and for resentencing, and find them without merit. Accordingly, we hold that the trial judge's action in refusing to recuse himself or to resentence the defendants was not an abuse of discretion. The June 3, 1977, district court order entered in United States v. Diaco (D.N.J. Crim. No. 74-555, and challenged in our No. 77-1761) will be affirmed. That district court order will be reversed as to the defendant-appellants Dansker, Haymes, Orenstein, Valentine and the Valentine Electric Company (our Nos. 77-1751/2/3 and 77-1762), and the case remanded to the district court for further action consistent with this opinion. This court's September 7, 1977, order will be vacated insofar as it extends Diaco's bail.
 
 
 7
 Judge Adams joins in this opinion except that he would grant an evidentiary hearing to determine whether the prosecution suppressed exculpatory evidence concerning Arthur Sutton's association with Anthony Carmanati and, if so, whether such suppression requires a new trial as to certain of the defendants.
 
 
 
 [1]
 The factual background of defendants' convictions is set forth in United States v. Dansker, 537 F.2d 40 (3d Cir. 1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977), where the issues on direct appeal from the jury's verdicts of guilty were decided in a thorough opinion by Chief Judge Seitz
 
 
 [2]
 Part C of this court's opinion in United States v. Dansker, supra, concluded with this language at 537 F.2d 65:
 "The defendants' allegations concerning Silver, if true, are relevant to the establishment of cause for a new trial. As such, they should be first presented to the district court on an appropriate Rule 33, Fed.R.Crim.Proc., motion. Of course, our decision in this response is without prejudice to any action which the defendants may wish to take in the district court. And, since we decline to pass on this matter, we express no opinion on the merits of defendants' Brady claim. United States v. McCrane, 527 F.2d 906, 914 (3d Cir. 1975).
 "We have considered all other contentions raised by the defendants and find them without merit. 15
 " 15 These contentions include the government's alleged Brady violation in refusing to disclose, prior to trial, any testimony of Sutton that was the basis for the second indictment in this prosecution which contradicted the allegations contained in the third indictment."
 
 
 [3]
 The IFC defendants' motions are reproduced at pages 49a-53a of the appellants' joint appendix. The other defendants incorporated the IFC motions in their own motions for new trial
 
 
 [4]
 Judge Lacey's lengthy opinion accompanying his order denying all the motions appears at pages 1156a-1247a of the joint appendix
 
 
 [5]
 Silver's statements controvert Sutton's denials of ever having participated in prior bribery schemes and his denial that Tony Comras was involved in the scheme to bribe Mayor Ross
 
 
 [6]
 Silver alleges Sutton had a long and checkered association with organized crime. More specifically, Silver imputes to Sutton an intention to "screw" one of the co-defendants, with whom he had portrayed himself as working in concert. Silver also alleges that Sutton had once threatened to kill Serota, who was paid off as part of the bribery scheme. In general, Silver casts Sutton as a ringleader in the bribery scheme rather than as an unwitting follower
 6a Cf. Government of the Virgin Islands v. Toto, 529 F.2d 278 (3d Cir. 1976) (jury verdict tainted by exposure to inadmissible testimony even where judge corrected error in his instructions; reversal warranted unless "it is highly probable that the error did not contribute to the judgment.").
 
 
 [7]
 One defendant, Joseph Diaco, is not entitled to an evidentiary hearing. The Silver information cannot exculpate Diaco even under the broad Agurs standard of materiality for reliance on perjured testimony. The Mayor of Fort Lee testified to receiving the bribe money from Diaco and the transaction was corroborated by tape recording. Thus, evidence of Diaco's guilt was overwhelming without any testimony by Sutton. There was no reasonable likelihood that the Silver evidence would have affected the jury's verdict of guilty
 
 
 [8]
 Whether applying the standards of a Rule 33 motion for new trial on the basis of after-discovered evidence or the standard of 28 U.S.C. Sec. 2255, as suggested by the parties, an evidentiary hearing is required to determine whether a new trial should be granted on the basis of the non-disclosed Silver information
 8a See paragraph 4 of the affidavit of Judge Bauman, counsel for Dansker (573A). Mr. Levin, counsel for Orenstein, stated to the trial judge that he was informed by his client on March 23, 1975,
 ". . . that a man named James Silver had communicated with Mr. Dansker and that Judge Bauman was interviewing him at his home at that date. That was a Sunday.
 "I spoke later that night and the following day with Foster Wollen, a partner of Mr. Bauman's, who advised me of the interview with Mr. Silver." (858A)
 
 
 [9]
 The verdicts of guilty against all appellants were handed down March 28, 1975. Post-trial motions were argued on or about April 28, 1975, decided by an opinion filed May 9, 1975, and denied by order not filed until June 3, 1975
 
 
 [10]
 For now we withhold judgment as to the extent of defense foreknowledge and inaction concerning Silver necessary to excuse prosecutorial non-disclosure of exculpatory information. We note only that prosecutorial suppression of exculpatory evidence denies defendants due process of law, Brady v. Maryland, 373 U.S. 83, 86-88, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and that, "where strategic and tactical decisions . . . by a counseled accused" are not involved (see Estelle v. Williams, 425 U.S. 501, 508, 96 S.Ct. 1691, 1695, 48 L.Ed.2d 126 (1976), at note 3), fundamental constitutional rights are presumed not waived unless knowingly and intentionally relinquished by the defendant. See Brewer v. Williams, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977); Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)
 10a We leave to the sound discretion of the district court the witnesses and evidence which should be permitted at the evidentiary hearing which is contemplated by this opinion and make clear that the witnesses listed here are not the only witnesses who may be called if the district court decides, in its discretion, after considering the contentions of counsel that other witnesses should testify.
 
 
 [11]
 In Weatherford v. Bursey, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), the Court pointed out at page 559, 97 S.Ct. at page 846:
 "There is no general constitutional right to discovery in a criminal case, and Brady did not create one; as the Court wrote recently, 'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded . . . .' Wardius v. Oregon, 412 U.S. 470, 474, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973)."
 11a Checks from Carmanati's 803 Building & Maintenance Co. were made available to the defense prior to trial (N.T. 2080-2091 & 2188), and defense counsel issued no subpoenas for other records of that company. See Estelle v. Williams, 425 U.S. at 508, note 3, 96 S.Ct. 1691, cited above in note 10 of this opinion.
 
 
 [12]
 In contrast to the Silver allegations, Carmanati's statements do not refer directly to the bribery scheme; nor do they imply that the prosecution relied on perjurious testimony. The Carmanati information bears only on the credibility of Sutton as a man financially associated with organized crime
 
 
 [13]
 These motions include the following:
 Motion for disqualification and discovery filed by the IFC defendants (1041a)
 Motion for new trial by defendant Diaco (1111a)
 Motion for new trial by Andrew Valentine and Valentine Electric Company (1128a)