**UNITED STATES of America, Plaintiff,**

v.

**Joseph DIACO, Defendant.**

**Crim. No. 74–555.**

United States District Court,
D. New Jersey.

Feb. 8, 1978.

Robert J. Del Tufo, U. S. Atty. William W. Robertson, Asst. U. S. Atty., Newark, N. J., for plaintiff.

Frederic C. Ritger, Jr., South Orange, N. J., for defendant.

## OPINION

LACEY, District Judge.

Defendant Diaco moves by motion filed on January 25, 1978, to reduce his sentence under Fed.R.Crim.P. 35.

He grounds his motion upon an unusual predicate: that on February 3, 1978 another judge of this court, taking issue with the five-year sentence I imposed upon Diaco and his codefendants in June 1975, vacated that sentence and purported to resentence certain of the defendants to a term of six months' incarceration and two and one-half years' probation.[1] Unfortunately for Diaco, he was not a beneficiary of this reduction. Only his codefendants Dansker, Haymes, Orenstein and Valentine (Diaco's superior in the corporate defendant Valentine Electric Company) were before my judicial colleague. Diaco's position is simply put: he wants me to treat him similarly. I decline to do so, for the reasons hereafter set forth.

### Procedural History

The record of this case will not inspire public confidence in the criminal justice system. The defendants Dansker, Valentine, Diaco, Haymes and Orenstein were convicted in March 1975, three years ago. On appeal they succeeded in obtaining reversal on two counts; however, their conviction on the count charging they attempted to bribe the Mayor of Fort Lee was affirmed. They next went to the United States Supreme Court which refused to hear their case.

They then came before me for reduction of sentence. By this time all but two trial counsel had been replaced. All defendants presented elaborate memoranda bearing on sentencing philosophy, comparisons of sentences imposed by other federal judges, and personal data from which counsel argued

the defendants were deserving not of the 5-year sentences of imprisonment I had imposed, but substantially less, in the area of two years.

After careful consideration of their motions, I denied the requests for reduction of sentence.

Defendants and their retained counsel also sought a new trial, claiming the United States had violated their rights by having concealed from the defendants *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) information, specifically, the identity of one James Silver and information received from him prior to trial.

As was developed on argument, the defendants and their then counsel had, during trial, met twice with Silver, had extensively interviewed him, and knew not only what he had told the United States, they also knew he had been interviewed by the United States and had written a letter to the United States Attorney.

After careful review of all the documents submitted to me on the motion, and having heard from counsel on three separate occasions, I filed a lengthy opinion denying the motion for new trial and denying as well defendants' motion for an evidentiary hearing.

It struck me that the motions for new trial and an evidentiary hearing were absolutely without merit. Defendants and their trial counsel, all of them exceptionally able and experienced trial lawyers, had, it was clear, made a decision not only not to utilize at trial the information gathered from Silver, but to refrain from bringing to my attention what was now, well after trial, being urged as a *Brady v. Maryland* violation.

An appeal was taken from my ruling. The Court of Appeals for the Third Circuit ruled that the defendants other than Diaco should have an evidentiary hearing, reversing my decision.

---

1. The Probation Office has indicated that the six months' incarceration may be subject to further good time reduction to less than five months in jail. Sutton, the key government witness, admitted his guilt, placed his life in jeopardy, and cooperated with the United States. I sentenced him, ironically it now appears, to six months in prison.

The matter then came back to this court and was assigned to Judge Meanor.[1a] The evidentiary hearing began before him on January 13, 1978 and continued on January 16 and January 17, 1978.

At this point the hearing terminated abruptly, and the defendants withdrew their motions for evidentiary hearing and new trial. The defendants stated they did so "in the interest of finality." They did not admit their guilt. At the same time there was set down for February 3, 1978 defendants' motion for resentencing by Judge Meanor. The transcript reflects no promise by Judge Meanor that he would do what I had refused to do, reduce the sentences originally imposed by me as the trial judge in 1975.

Why then would the defendants withdraw their applications, pressed so vigorously before me and on appeal, for a new trial, and accept, finally, their incarceration?

The answer would appear to lie in Judge Meanor's explicit statement, following the testimony of Silver, that he had substantial doubts as to Silver's credibility. Tr. 344 (Hearing of January 17, 1978).

That then is the background for what is now before me. I disagree strongly with what Judge Meanor did in reducing the sentences. As I have noted, he had not committed himself in advance to reducing their sentences in return for their withdrawing their motions for new trial.[2] Thus, unfettered by any prior commitment, in the face of a virtual acknowledgment by defendants that their motions were frivolous and designed only to buy time, Judge Meanor, who did not sit through the trial, has seen fit to vacate my sentence and substitute in its stead one substantially less. He obviously takes a less serious view of political corruption than I do. This is his right as a judge. Unfortunately, in giving expression to his own philosophy, he has placed the court and me in a most embarrassing position.

First, he has displayed a lack of respect for the sentence imposed by me three years ago. I had not imposed that sentence lightly. Indeed, as I advised counsel at that time, I had reviewed the pre-sentence reports with Chief Judge Whipple and Judge Barlow, the two most senior judges in this district, and had conferred with them as to the most appropriate sentence.[3] My sentence was ultimately imposed only after having derived the judgment of these two brother judges. Thus, the disrespect manifested by my colleague in vacating my sentence reflects not only upon me but upon the court as a whole.

The court is further embarrassed by reason of the fact that, as Judge Meanor knew would be the case, Diaco now petitions me for equal treatment. Quite properly, he points to the disparity between an approximate six months' confinement and the sentence I imposed.

The embarrassment is made even more marked because now, distasteful as I find it in elucidating on why I am denying Diaco's motion, I must inevitably criticize Judge

---

1a. The defendants continued to urge that I was prejudiced against them and that I should recuse myself. While, as the court of appeals had found, their claim of prejudice was without basis, I nonetheless voluntarily recused myself to avoid even the appearance of impropriety. The matter was then reassigned to Judge Meanor.

2. Diaco's counsel has stated he filed his motion after his codefendants withdrew their motions and *before* Judge Meanor's sentencing because he "drew from the totality of everything . . . that there was going to be some kind of a reduction . . . ." Tr. 18 (Hearing before J. Lacey, February 3, 1978). I am unwilling to accept that my brother judge gave any assurances that he would reduce the sentences to induce the defendants to withdraw their motions in the face of the unequivocal responses of the defendants to the court that no such commitment had been given.

Fed.R.Cr.P. 11 is not applicable since it relates to plea discussions only when a defendant enters "a plea of guilty or nolo contendere." The defendants here have not admitted their guilt. Any judge who participates "in any such discussions" violates the law as set forth in Rule 11. Even more egregious misconduct would be reflected in ex parte "plea discussions." As I have noted, the record assures us that such did not occur here.

3. *See* Sentencing Transcript of June 3, 1975, p. 4.

Meanor, a brother judge, an experience which is totally alien to me.

## Discussion

### I. Judge Meanor's Resentence—On the Merits.

To determine whether my colleague's substitution of his own sentence for mine was well reasoned, and should guide me in Diaco's case, I have read very carefully the transcript of the sentencing proceedings before him on February 3, 1978.

While neither counsel nor the defendants addressed the court, the court referred to the trauma the defendants had suffered by reason of the large delay between their initial sentencing and the present. Putting aside the fact that the defendants had not advanced any claim of trauma on the record, I cannot accept that as a reason for reducing a sentence here.

The delay—and an unseemly one it is from the point of the public's view of the criminal justice system—was directly the result of the defendants' raising in the district court and on appeal, after their convictions had been affirmed and I had ordered incarceration, a *Brady* issue which I had found frivolous. My colleague held three days of hearings, saw and heard James Silver, upon whose testimony the *Brady* claim rested, and reflected in the record his lack of confidence in Silver's testimony. The significance in this is that the defendants have consistently rested their *Brady* claim on Silver who, it appears, is a thin reed.

In addition to the "trauma" reason, my colleague also relied upon the defendants' withdrawal of their motion making for finality. This reason too fails to withstand analysis. Defendants and their counsel must have been as aware as the court of Silver's shortcomings.

Finally, my colleague implied that my five-year sentence was too severe. I have already noted that I discussed my sentence with two experienced and respected members of this court before imposition. Moreover, the sentence was well within the range of other sentences imposed by other judges of this district in recent years.

Accordingly, I find no rational basis upon which I could justify sentencing any one of these defendants to incarceration of six months or less. Such a sentence is incomprehensible given the crime committed.

Given the foregoing analysis, to grant Diaco's motion would be to subordinate my judicial conscience and sense of what is right morally and legally to a colleague's act. With all due respect to a brother judge, I believe he has committed a grievous error; this being so, I will not allow my actions to be directed—or influenced—by his.

In short, I am not persuaded by Diaco's argument that because my colleague has reduced a sentence imposed by me, after I had already declined to do so, I should now place myself in his mold.

Thus, even were I free to reduce Diaco's sentence, I would not do so. The fact that, under principles of law that are emphatically clear, I am not free to resentence Diaco will now be discussed.

### II. Judge Meanor's Resentence—On the Law.

Rule 35 of the Fed.R.Crim.P. provides as follows:

The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence. The court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction. The court may also reduce a sentence upon revocation of probation as provided by law.

Rule 45 Fed.R.Crim.P. bars me from extending the time for taking any action under Rule 35, except under circumstances which are here non-existent.

Thus, even were I disposed to reduce Diaco's sentence, under law I am without jurisdiction to do so.

The fact that the court of appeals sent the matter back for an evidentiary hearing on a motion for new trial on *Brady* grounds in November, 1977 clearly has absolutely no effect upon the jurisdictional limitation, imposed by Fed.R.Crim.P. 35, upon a district court's power to reduce a sentence only "within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment . . . or within 120 days after entry of any order or judgment of the Supreme Court denying review of . . . a judgment of conviction."

Sentence was imposed in June, 1975. After the court of appeals affirmed the conviction of Diaco, Valentine, Dansker, Haymes and Orenstein, these defendants filed their petition for certiorari in the Supreme Court. The Court denied the writ on January 10, 1977, and the motion heretofore referred to was filed soon thereafter (and within 120 days) for reduction of sentence and was thereafter denied by me. It was timely.

Diaco's present motion is not timely. Rule 35 is plain in its language and import and must be obeyed. There is no grant, by the Rule or case law of discretion to this court to apply a different sentencing philosophy, or to plea bargain, or for any other reason to reconsider and then revise a sentence, when a motion is filed, as here, in January, 1978, a year after the Supreme Court upheld the judgment of conviction.

There can be no doubt about the law. In *United States v. United States District Court,* 509 F.2d 1352 (9th Cir.), *cert. denied,* 421 U.S. 962, 95 S.Ct. 1949, 44 L.Ed.2d 448 (1975), a district judge attempted what my colleague here has done, imposing a lesser

4. Every judge is familiar with these belated and repeated "importunities" for reduction of sentences, received at the rate of at least once a week, from defendants or their families. We usually deny them by a short memorandum and order that states the motion has been considered and denied. Often, as was the case with Diaco's earlier tardy motion for reduction,

sentence "after expiration of the original 120-day period . . . pursuant to a *second* motion to reduce sentence . . ." 509 F.2d at 1356.

The court stated that the later motion could not "relate back to . . . [the] original timely motion . . . and the court . . . lacked power to consider the new motion." *Ibid.* This was so, the court added, even if the second motion was simply for "clarification" of the first order or even if the district court had, at the time of the first order, "purported to 'retain jurisdiction' over the sentence." *Ibid.*

The court then stated (509 F.2d at 1356):

To rule otherwise would all but nullify the 120 day time limit and would undermine completely the purpose of Rule 35 which was enacted, in part, to limit the period over which the district court has discretionary control over its own sentences.[6]

6. As Professor Moore has noted, "Some limitation on the court's power seems to be necessary, for after a lapse of time the peculiar ability of the court to determine sentence gives way to the presumably greater competence, and knowledge, of penal authorities." 8A J. Moore, Federal Practice ¶ 35.02[1] at 35–4 n. 5 (2d ed. 1974); *cf. United States v. Smith,* 331 U.S. 469, 476, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947). Furthermore, some limitation is necessary to protect the district court judge from continual importunities while the defendant is serving his sentence.[4]

Reviewing the record, I note that my colleague, apparently in doubt as to his power to resentence under Fed.R.Crim.P. 35 at this late date, sought the government's understanding. Tr. of January 17, 1978, pp. 315–319. Its response was that it believed he had the power to do so. Of course it was wrong. In any event, the responsibility is the court's, not counsel's; even if the government *consents* to a judge's untimely resentencing under Rule 35, it is without power to confer jurisdiction where none exists.[5]

we do not amplify further with a discussion of the jurisdictional limitations of Rule 35.

5. In *United States v. United States District Court, supra,* at 1355 n. 2, the court stated:

Rosselli contends that the Government's failure to raise jurisdictional defects at the pre-March 25, 1974 hearings on sentence reduction precludes it from raising that issue here.

Thus, should the government, as Diaco's counsel now suggests, *consent* to my acting under Rule 35, I could not and would not do so. Moreover, even if I did so act, the Bureau of Prisons and the Parole Commission, which of course are bound to enforce the law, as I am, would be compelled by their counsel's advice to regard my resentence as a nullity and to enforce the original sentence.

What will now be done with the sentences of Dansker, Haymes, Orenstein and Valentine, now that I have pointed out the lack of power to resentence, is of course impossible for me to predict. I will, however, transmit a copy of this opinion to the Bureau of Prisons and the Parole Commission, along with a letter suggesting that if, notwithstanding that the total lack of power in my colleague to reduce the sentences of the others renders his action null and void, their resentencing stands and is honored by the Bureau of Prisons and Parole Commission, Diaco be considered for parole as soon as the guidelines and his institutional adjustment permit.

In that way the deplorable result fashioned by the February 3, 1978 resentencing can be ameliorated to a degree. Beyond this I cannot go without betraying my own concepts of judicial propriety and my sworn obligation to uphold the law.

---

This argument is without merit. *See Mansfield, Coldwater & Lake Michigan Ry. Co. v. Swan,* 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884).

Judge Meanor saw the motion before him as an "on going part of the case." As the court of appeals pointed out in 561 F.2d 485 (3d Cir.

1977), defendants' motion for a new trial was under the "newly discovered evidence" portion of that rule, which allows such motions to be made within two years of final judgment. Obviously, it was not contemplated that the strict limitation of Rule 35 could be reopened up to two years later.