UNITED STATES of America

v.

**Joseph DIACO, Defendant.**

No. 74–555.

United States District Court,
D. New Jersey.

Sept. 25, 1978.

Robert Del Tufo, U. S. Atty. by Maryanne T. Desmond, Asst. U. S. Atty., Newark, N. J., for plaintiff.

Frederic C. Ritger, South Orange, N. J., for defendant.

LACEY, District Judge.

On June 3, 1975 Joseph Diaco was sentenced by this court to a term of imprisonment of five years and, on November 14, 1977, after extensive proceedings before this court, the Court of Appeals for the Third Circuit, and the United States Supreme Court, he commenced service of that sentence. Under the sentence as imposed, and by virtue of 18 U.S.C. § 4205(a), Diaco would not become eligible for parole until one-third of that sentence has been served, on July 12, 1979.

The Bureau of Prisons, by its Director, Honorable Norman A. Carlson, has now requested the Office of the United States Attorney to file on its behalf a motion for reduction of Diaco's minimum term to time served, pursuant to 18 U.S.C. § 4205(g) of the Parole Commission and Reorganization Act, 18 U.S.C. §§ 4201–18 (Pub.L. No. 94–233, 90 Stat. 219, eff. May 14, 1976).[1] Mr. Carlson's letter reads as follows:

Under the Parole Commission and Reorganization Act (P.L. 94–233, March 15, 1976), the Bureau of Prisons is authorized to make a motion to a sentencing court for the purpose of reducing a defendant's minimum term of imprisonment to time served (18 U.S.C. 4205(g)). This portion of the Act states as follows:

"At any time upon motion of the Bureau of Prisons, the court may reduce any minimum term to the time the defendant has served. The court shall have jurisdiction to act upon the application at any time and no hearing shall be required."

In that regard, I hereby request that you file a motion for reduction of the minimum term of Joseph Diaco to time served so that he might be eligible for immediate parole consideration. Mr. Diaco was sentenced on June 3, 1975 in the U. S. District Court for the District of New Jersey by Judge Frederick Lacey to a term of imprisonment of five years for bribery in interstate commerce, in violation of 18 U.S.C. § 1952. Mr. Diaco began serving his sentence on November 11, 1977 and is not presently eligible for parole until July 12, 1979.

Mr. Diaco was originally convicted in March 1975 along with four other persons (Norman Dansker, Steven Haymes, Donald Orenstein, and Andrew Valentine) who were also sentenced to five year terms of imprisonment by Judge Lacey. In the course of considerable appellate and post-trial proceedings, the sentence of each of these other four persons was reduced to a term of six months' incarceration and two and one-half years' probation by Judge H. Curtis Meanor on February 3, 1978. Mr. Diaco's motion of January 25, 1978, for reduction of sentence pursuant to Rule 35 was denied by Judge Lacey on February 8, 1978 for lack of jurisdiction.

One result of these proceedings is that Mr. Diaco is serving a significantly longer sentence than those of his codefendants. In view of this disparity, the sentencing court may wish to act to reduce Mr. Diaco's minimum term of imprisonment to time served pursuant to 18 U.S.C. § 4205(g). Prior to the passage of the Parole Commission and Reorganization Act, application for relief in cases of this type had to be processed through the Pardon Attorney to the President of the United States. I would emphasize that

---

1. 18 U.S.C. § 4205(g) provides: "At any time upon motion by the Bureau of Prisons, the court may reduce any minimum term to the time the defendant has served. The court shall have jurisdiction to act upon the application at any time and no hearing shall be required."

granting of the motion by the court under § 4205(g) merely makes the defendant immediately eligible for parole consideration, and does not result in immediate release.

If you require further information concerning this case, do not hesitate to contact me.

By motion filed September 14, 1978, the United States Attorney acceded to that request. If this court acts favorably on this motion, Diaco would become immediately eligible for parole. The Office of the United States Attorney urges such favorable action.

## PRIOR PROCEEDINGS

Joseph Diaco and co-defendants Dansker, Haymes, Orenstein and Valentine were convicted on March 28, 1975 of two substantive violations of 18 U.S.C. § 1952 for attempting to bribe two state officials and of one count of conspiracy to commit those offenses. On June 3, 1975 each defendant was sentenced by this court to concurrent five-year terms and to pay fines of $30,000. On June 24, 1976 the convictions on one count were affirmed, on one count vacated, and on one count reversed, and *certiorari* was denied on January 11, 1977.[2]

One of the issues raised on direct appeal was the alleged violation by the government at trial of its duty to produce exculpatory evidence, the so-called James Silver information. Defendants alleged that prior to trial the government had received from Silver, a former associate of the government witness Arthur Sutton, written and oral statements which might have materially aided them in discrediting Sutton's testimony, had they had it at trial. The defendants did not, however, advise the Court of Appeals that three of them (not, ironically, Diaco) had become aware of Silver and the nature of his testimony during trial, twice interviewed him, and had made a reasoned decision not only not to call him to testify

but to refrain from reporting to the court about the matter and to forego making any *Brady* claim during trial or at the time of post-trial motions.

The Court of Appeals decided it would not resolve the *Brady* claim in the first instance (537 F.2d at 65). Therefore, on January 18, 1977, the defendants moved before this court for a new trial and sought an evidentiary hearing. They also sought my disqualification pursuant to 28 U.S.C. § 455.

By opinion filed June 2, 1977, 449 F.Supp. 1057 (D.N.J. 1977) and order filed June 3, 1977, I rejected the *Brady* claims, finding that they rested on an unacceptable analysis of evidence in the case. The motions for a new trial, for an evidentiary hearing, for disqualification, and for reduction of sentence were also denied, and defendants were directed to surrender forthwith. Their application for bail pending appeal was denied, but their application for a stay of surrender until June 27, 1977 was granted.

Diaco and his co-defendants did not, however, commence service of their sentences on June 27 but rather, by a series of applications to single judges, and thence to panels, of the Court of Appeals, were permitted to remain at large. By opinion dated August 15, 1977 their petition for rehearing *en banc,* filed June 28, 1977, and their motion for reconsideration of the denial by the Court of Appeals of their application for bail pending appeal were denied. 561 F.2d 485 (3d Cir. 1977). Again, however, Diaco and his co-defendants, who had been permitted to remain free until the petition for rehearing had been ruled upon, did not surrender but rather were continued on bail by a single judge of the Court of Appeals until the completion of the September 7, 1977 oral argument on the appeal from the denial of the new trial motion. On September 7, 1977 defendants' application to be continued on bail pending the decision on the appeal was granted.

2. The facts leading to those convictions are set forth in *United States v. Dansker*, 537 F.2d 40 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Following the

direct appeal, this court reduced all fines to $10,000 but otherwise denied all motions for reduction or modification of sentence.

The opinion deciding this appeal was filed on October 28, 1977. 565 F.2d 1262 (3d Cir. 1977). As to Diaco, the court affirmed this court's decision, stating that the evidence of his guilt was overwhelming and that no reasonable likelihood existed that the so-called Silver evidence would have affected the jury's verdict of guilty. *Id.* at 1264, n.7. The court vacated its September 7, 1977 order extending bail as to him; and thereafter Diaco commenced service of his sentence on November 14, 1977 and took no further appeal.

As to the remaining defendants, however, the court reversed in part and affirmed in part, and remanded for an evidentiary hearing on the *Brady* claim involving Silver to determine if "some exculpatory evidence related to the bribery scheme might have been developed at trial." *Id.* at 1264. I initially set the hearing down for November 13, 1977 and, on defendants' application, postponed the hearing until November 22, 1977. These defendants' objections prevented the hearing from commencing on both dates, first, pending a decision from the Court of Appeals on the petition for rehearing they had filed on November 4, 1977 and, later, until the mandate issued and the appellate process concerning "the issue of whether Judge Lacey may preside at the hearing" was completed. The rehearing petition was denied as was defendants' application for a fifteen-day stay of mandate and the Court of Appeals directed that the mandate issue forthwith. A petition for a writ of *certiorari* which raised but one issue—whether the Court of Appeals correctly determined that no basis existed for this court to have disqualified itself—was thereafter filed in the United States Supreme Court.

By memorandum opinion dated November 18, 1977 I voluntarily disqualified myself from conducting the evidentiary hearing. After discussing the three-year delay occasioned by defendants' action, I stated:

It is evident from their latest motion that appellants are using their alleged reluctance to have me preside at the *Brady* hearing to delay further the evidentiary hearing, its determination, and, if the determination was against them, their incarceration. Accordingly, in order that this matter may move forward with dispatch, I have determined voluntarily to disqualify myself from presiding further in this matter. . . . The appellants then will have no basis for postponing further the evidentiary hearing they had been seeking.

On November 19, 1977 the hearing involving these defendants was assigned to another judge of this court, and the petition for a writ of *certiorari* was withdrawn shortly thereafter by these defendants.

The hearing as to Diaco's co-defendants then commenced on January 13 and continued on January 16 and 17, 1978. After Silver had testified, the hearing terminated pursuant to what is best described as a settlement. Under the terms of this settlement the defendants agreed to withdraw their motion for a new trial and any claims contained therein and to waive any and all rights to attack their convictions on any ground. The government agreed to take no position on reconsideration of sentence and to dismiss all pending charges against the defendants with reference to the case. Resentencing was scheduled for February 3, 1978.

On February 3 the judge involved resentenced Diaco's co-defendants to six months' incarceration on a three-year sentence, with the execution of the remainder of the sentence suspended, and probation for a period of three years. As a special condition of probation, the defendants were directed to submit to residency at the Community Treatment Center in New York City for a period of two months, to commence upon release from confinement. These defendants commenced service of their sentence on February 27, 1978, more than thirty-five (35) months after the jury returned its verdict of guilty. They were released in August 1978.

Prior to the foregoing resentencing, but after the evidentiary hearing had terminated, Diaco, on January 25, 1978, filed a motion pursuant to Fed.R.Cr.P. 35 for reduc-

tion of sentence.[3] This motion was assigned to me. A hearing on the motion commenced on February 3 and continued on February 8 when, by opinion filed that date, 448 F.Supp. 978 (D.N.J. 1978), and order filed February 21, 1978, the motion was denied.

The basis of the denial was my determination that I lacked jurisdiction under law to reduce the sentence pursuant to Rule 35 and that, even if such jurisdiction existed, I would have denied the application on the merits. Regarding the jurisdictional issue, I stated:

> Diaco's present motion is not timely. Rule 35 is plain in its language and import and must be obeyed. There is no grant, by the Rule or case law, of discretion to this court to apply a different sentencing philosophy, or to plea bargain, or for any other reason to reconsider and then revise a sentence, when a motion is filed, as here, in January 1978, a year after the Supreme Court upheld the judgment of conviction.

448 F.Supp. at 982.

Diaco's argument that because another judge, asserting jurisdiction under Rule 35 to do so, had reduced the sentences of the co-defendants, I should act similarly with respect to Diaco, was rejected by me. I did, however, state:

> I will . . . transmit a copy of this opinion to the Bureau of Prisons and the Parole Commission, along with a letter suggesting that if, notwithstanding that the total lack of power in my colleague to reduce the sentences of the others renders his action null and void, their resentencing stands and is honored by the Bureau of Prisons and Parole Commission,

Diaco be considered for parole as soon as the guidelines and his institutional adjustment permit.

> In that way the deplorable result fashioned by the February 3, 1978 resentencing can be ameliorated to a degree. Beyond this I cannot go without betraying my own concepts of judicial propriety and my sworn obligation to uphold the law.

448 F.Supp. at 983.

The Court of Appeals affirmed my decision and left undisturbed Diaco's sentence. *United States v. Dansker,* 581 F.2d 69 (3d Cir. 1978). Specifically, it approved my determination that a district judge cannot reduce a sentence under Rule 35 where a motion is filed after the 120-day period of the Rule since he lacks jurisdiction to do so.[4]

Now the matter is before me by reason of the action taken by the Bureau of Prisons and upon motion of the United States Attorney. In the period since I denied Diaco's motion, the Justice Department having determined not to appeal my colleague's reduction of the sentences of Diaco's co-defendants, and the Bureau of Prisons having elected to honor this reduction notwithstanding (as the Court of Appeals has held), there may be no valid reduction under Rule 35 after expiration of the 120 days of that Rule, his co-defendants are now at large.

## DISCUSSION

Under 18 U.S.C. § 4205(g), as I have noted, Diaco would not have become eligible for parole until July 12, 1979. I have determined that it is in the best interests of justice that I grant the application made by the United States Bureau of Prisons, and the United States Attorney, thus making

---

**3.** Fed.R.Cr.P. 35 reads:

> The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence. The court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having

> the effect of upholding, a judgment of conviction. The court may also reduce a sentence upon revocation of probation as provided by law.

**4.** The Court of Appeals also referred to the events before my colleague as follows: "That the court which resentenced [Diaco's] co-defendants may have lacked jurisdiction to do so is not an issue properly before this court, although, concededly, it appears to be a historical fact." *United States v. Dansker,* 581 F.2d 69, at 74 (3d Cir. 1978).

him eligible for parole at this time. It will then be up to the Parole Commission to decide whether it will grant or deny his release on parole. *See* 18 U.S.C. §§ 4201, *et seq.*

Given the facts of this case, there can be no justification for requiring Diaco to serve a significantly longer sentence than did his co-defendants. As the affidavit of his attorney, Mr. Ritger, filed in support of the United States' motion, states (para. 8–10), the principal wrongdoers in this case were Diaco's co-defendants, not Diaco himself. While his role can be said to have been more visible, it is clear that, at the time he was attempting to corrupt a public official, he was acting on behalf of his co-defendants who had conceived and implemented the wrongdoing which was the subject of the indictment. Under these circumstances, it would be rank injustice to continue Diaco's five-year sentence when those who were at least equally as culpable, if not more culpable, had to serve only six months instead of the five years imposed by me. Aside from the fundamental question of what is justice, I cannot overlook the fact that if Diaco is to return to society penitent and rehabilitated, concepts which are cornerstones of our penological science, it must be recognized that the punishment imposed upon him for his offense against society cannot be disparate with that imposed on Dansker, Haymes, Orenstein and Valentine.

This is not to say that I feel that the five-year sentences I originally imposed on all of the defendants were inappropriate under the circumstances. Their crime was an egregious one, as I observed on the day of sentence over three years ago. As I noted in my opinion of February 8, 1978 [448 F.Supp. 978], I take strong issue with the action of my colleague who so drastically reduced the sentences imposed by me upon Dansker, Haymes, Orenstein and Valentine. As I further noted, *id.* at 983, it was my view that since my colleague's action was *ultra vires,* the reductions ordered by him would and should have been ignored by the Bureau of Prisons and the Parole Commission. Recognizing, on the other hand, that these agencies might not wish to

denigrate the order of my colleague, I stated that if they were going to honor his determination, "[it was my wish that] Diaco be considered for parole as soon as the guidelines and his institutional adjustment permit." Presumably, it is pursuant to this latter suggestion that the instant action of the Bureau of Prisons has been taken.

In view of the foregoing and the positions taken by the Bureau of Prisons and the United States Attorney, it is appropriate that the motion be granted.

In this regard, the materials submitted to me reflect that Diaco has been a model prisoner. Indeed, in addition to conducting himself creditably as a prisoner, he has apparently performed extraordinary services at the institutions where he has been confined. On one project, through his ability and dedication, he was awarded a section 9 award at the Federal Correctional Institution at Danbury, Connecticut. It also appears that subsequent to his first endeavor, he again distinguished himself while at Danbury and was recommended for another section 9 award. Thereafter, assigned to the Metropolitan Correctional Center, he distinguished himself and once again has been recommended for a section 9 award.

As a sample of the foregoing it is sufficient to cite by way of example one report dated January 10, 1978, concerning Diaco's work at Danbury:

On the evening of 1–9–78 the above named man was working under abnormal conditions in an effort to restore power and lights to the Institution.

He was on the roof in a snowstorm with winds up to hurricane force in 10 degree weather for 4½ hours repairing the transformers.

His tremendous effort and fine spirit should be recognized and rewarded.

The work he did was far above and beyond his normal work requirements and also saved the Institution money as an outside work crew was not needed to make repairs.

The various submissions, including the prison information and, as well, the letter

from the Bureau of Prisons to the United States Attorney are annexed to this opinion.

In addition to the materials relating to his prison adjustment which I have just reviewed, I have also been furnished with the affidavit of Mr. Ritger, communications from Diaco himself, members of his family, and Diaco's spiritual advisor. It would seem that Diaco has a firm and sound family environment to which he will be able to make a substantial contribution when and if he is released by the Parole Commission. In this regard, I do not intend to intrude into the decision-making process of the Commission. Obviously, my function is simply to act within the confines of 18 U.S.C. § 4205(g).

By virtue of the foregoing and for all of the reasons set forth, the motion of the United States is granted.